## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| OPEN TEXT CORP., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. <u>6:20-cv-00920</u> |
| | ) | |
| ALFRESCO SOFTWARE, LTD., | ) | JURY TRIAL DEMANDED |
| AND ALFRESCO SOFTWARE, INC., | ) | |
| ALFRESCO SOFTWARE AMERICA, INC. | ) | |
| BLUE FISH DEVELOPMENT GROUP, LTD. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Open Text Corporation ("OpenText Corporation") alleges against Defendants Alfresco Software Ltd, Alfresco Software, Inc., Alfresco Software America, Inc. (collectively "Alfresco") and Blue Fish Development Group, Ltd. ("Blue Fish") (collectively, "Defendants") as follows:

1.      OpenText Corporation provides information management solutions that allow companies to organize and manage content, operate more efficiently, increase engagement with customers, collaborate with business partners, and address regulatory and business requirements.

2.      OpenText Corporation provides such solutions by distributing software products and providing customer support and professional services through a number of subsidiaries, including Open Text, Inc., which sells OpenText software and services in the United States.

3.      The OpenText family of companies (collectively "OpenText") has approximately 15,000 employees, more than 74,000 customers, and over $3.11 billion in annual revenues.

OpenText invested approximately $1 billion on research and development over the three years ending June 30, 2020.

4.      OpenText is a leading provider of Enterprise Content Management ("ECM") products, which refer to a variety of solutions for managing business content. One such solution provides a repository for electronic documents (such as those created via Microsoft Office, Computer-Aided Design, or Portable Document Format) and allows for functions such as organization, display, classification, access and version control, event auditing, rendition, and search. ECM also includes software tools and services for collaboration, records and email management, and archiving.

5.      OpenText's ECM provides the foundation for its offerings in a broader market category known as Enterprise Information Management ("EIM"). EIM encompasses capabilities such as Business Process Management ("BPM"), Customer Experience Management ("CEM"), Information Exchange ("IE"), and Discovery. OpenText offers a range of software products and services in each of these areas, including Documentum. OpenText's technologies have become critical to organizations looking for efficient content management options.

6.      Gartner's Magic Quadrant report for 2019, published October 30, 2019, named OpenText  a "Leader" in Content Services Platforms. And Gartner's 2019 Market Share Analysis, published July 24, 2020, ranked OpenText one of the "Top Five Content Services Providers, Worldwide" in 2019; in particular, OpenText was ranked first for "Content Services Platforms."

7.      OpenText currently maintains three offices in the State of Texas, two of which are located in this judicial district, including the Austin office and the San Antonio Office. Over 60 employees work in OpenText's Austin office, including employees in engineering, customer support, legal and compliance teams, IT, and corporate development. The Austin office also hosts

2

one of OpenText's data centers.

8.      OpenText tracks its business through four revenue streams: license, customer support, cloud services, and professional services. OpenText receives license revenue from its software products; customer support revenue from renewable support and maintenance OpenText provides to customers who have purchased its products; cloud services revenue from certain "managed hosting" services arrangements; and professional services revenue from consulting fees OpenText collects for providing implementation, training, and integration services related to OpenText's product offerings.

9.      Alfresco Software, Ltd., Alfresco Software, Inc., and Alfresco Software America, Inc., (collectively, "Alfresco" or "Defendants"), provide ECM software in the form of online, on-premises, and hybrid content management services which can be accessed by computers or mobile devices.

10.     Alfresco's ECM software includes, without limitation, modules for Document Management, Enterprise Collaboration, Process Management, and Governance Services, such as Records Management, eDiscovery and Legal Holds, and Security and Controlled Access.

11.     Alfresco competes directly with OpenText in the ECM and EIM markets by its manufacture, use, sale, and offer for sale of Alfresco's ECM software, which infringes OpenText's intellectual property rights.

12.     OpenText brings this lawsuit to protect its intellectual property investments and to hold Alfresco accountable for its infringement. As a result of Alfresco's unlawful competition in this judicial district and elsewhere in the United States, OpenText has lost sales and profits and suffered irreparable harm, including lost market share and goodwill.

## **NATURE OF THE CASE**

13.     Plaintiff brings claims under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, for the infringement of the following United States Patent No. 7,627,726 ("the '726 patent"), No. 7,818,300 ("the '300 patent"), No. 8,712,980 ("the '980 patent"), and No. 8,370,388 ("the '388 patent") (collectively, the "Patents-in-Suit").

## THE PARTIES

14.     Plaintiff OpenText Corporation, is a Canadian corporation with its principal place of business at 275 Frank Tompa Drive, Waterloo, Ontario, Canada.

15.     Defendant Alfresco Software, Ltd is a foreign corporation with its global headquarters at Bridge Avenue, The Place, Maidenhead, SL6 1AF, United Kingdom.

16.     Defendant Alfresco Software, Inc. is a Delaware corporation with its principal place of business at 100 Worcester St., Suite 203 in Wellesley, Massachusetts. Alfresco Software, Inc. is a subsidiary of Alfresco Software, Ltd.

17.     Defendant Alfresco Software America, Inc. is a Delaware corporation with its principal place of business at 2839 Paces Ferry Road SE, Suite 720, Atlanta, Georgia 30339.

18.     Defendant Blue Fish Development Group Ltd is a Texas limited partnership with places of business listed at 8100 Shoal Creek Blvd, Austin, TX 78757; 701 Brazos St., Suite 700, Austin, TX, 78701; and 3410 Far West Blvd., Suite 265, Austin, TX 78731.

## JURISDICTION & VENUE

19.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.* The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

20.     This Court has personal jurisdiction over Defendants because they regularly conduct business in the State of Texas and in this district, including operating systems and/or providing services in Texas and in this district that infringe one or more claims of the Patents-in-

Suit in this forum. Alfresco has, either directly or through intermediaries such as Blue Fish, purposefully and voluntarily placed its infringing product and/or services into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District, as detailed below.

21.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b) because, upon information and belief, Alfresco regularly conducts business within this District, has a regular and established place of business in this District, and has committed acts of infringement within this District. In addition, on information and belief, as a foreign corporation with sufficient contacts with this District, venue is proper against Alfresco Software Ltd. in this District. Further, on information and belief, venue is proper in this District against Blue Fish Development Group, Ltd., which as set out above and below, is organized under the laws of Texas and has regular and established places of business in this District.

22.     Both Alfresco Software Americas, Inc. and Alfresco Software Ltd. are registered businesses in Texas. (Exhibit 1.)

23.     On information and belief, Alfresco conducts its business through locations within this judicial district, including on information and belief at least one location present from July 2015 through 2020:

6.    ALFRESCO SOFTWARE INC
      TIN: ██████████                             4816 CHESNEY RIDGE
                                                  DR
                                                  AUSTIN, TX 78749-1140
                                                  Jul 15

      Match Names/Locations (up to 5):
      ALFRESCO SOFTWARE AMERICAS INC                4816 CHESNEY RIDGE DR
                                                    AUSTIN,TX78749-1140
                                                    May 20

(Exhibit 2.) On information and belief, Alfresco may have or has had additional locations in this

judicial district. (Exhibit 2.)

24.     On information and belief, Alfresco has employees in this district, including Scott Ashcraft, Technical Lead, Expert Support (Exhibit 3) and Ganessan Paramanathan, Senior Solutions Engineer, Strategic Accounts (Exhibit 4).

25.     On information and belief, Alfresco relies on a network of partners to provide implementation services to its customers. For example, Alfresco represented that, by the end of 2016, it expected to have 70% of its business deployed through its channel partners. (Exhibit 5.)

26.     Through its gold and later platinum level partner, Blue Fish based in Austin, Texas, Alfresco and Blue Fish make, use, advertise, offer for sale, and/or sell infringing ECM systems within this judicial district. (Exhibit 6 ("scalable Alfresco Enterprise Content Management System").) For example, beginning as early as August 14, 2009, "Alfresco Software, Inc. . . . and Blue Fish Development Group, Ltd., an ECM-focused consulting and application development firm based in Austin, TX, [ ] announced that Blue Fish ha[d] become a member of the Alfresco Software Gold Partner Program." (Exhibit 7.) Through Blue Fish, Alfresco specifically targets the "Texas region," which "offers Alfresco considerable growth potential":



(See  https://www.alfresco.com/news/press-releases/blue-fish-development-group-joins-alfresco-gold-partner-program)

27.     Alfresco ECM software is Blue Fish's "recommended platform[]":



(*See* https://bluefishgroup.com/ecm-services/)

28.     Blue Fish encourages its customers to use infringing Alfresco ECM software by

offering an "Alfresco Quick Start" program (Exhibit 8) program and its "Alfresco Small Bites" program, through which Blue Fish offers evaluation, installation, configuration, customization and development of Alfresco ECM software, as well as migrating documents from external sources or other ECM systems into Alfresco's ECM system. (Exhibit 9.) Blue Fish has recommended that at least several of its customers use Alfresco's ECM software and has helped migrate customers from other ECM platforms to Alfresco's ECM platform, including replacing the Texas Education Agency's FileNet ECM system with Alfresco's Enterprise Content Management System. (Exhibit 10.)

29.     Through its partner BP3, headquartered in Austin, Texas, Alfresco advertises, offers for sale, and sells infringing ECM within this judicial district. (Exhibit 11.) For example, through BP3's Austin headquarters, Alfresco is able to offer implementation services directly to enterprise customers in this district. (Exhibit 12.)



30.     Alfresco has sold infringing ECM to at least the following customers who have regular and established places of business in this judicial district:

- Pitney Bowes with an office located at 1825B Kramer Lane Suite 100, Austin TX 78758-4965. (Exhibit 13; Exhibit 14.)

- Cisco Systems Inc. with an office located at 12515-3 Research Park Loop, Austin, TX 78759. (Exhibit 15.)

- Carlson Rezidor Hotel Group, with multiple hotels in both San Antonio and Austin, TX. (Exhibit 16; Exhibit 17; Exhibit 18.)

- Liberty Mutual Insurance, with at least two sales offices in Austin, TX. (Exhibit 19; Exhibit 20.)

- RBC Capital Markets, with offices in both Austin, TX (300 W. 6th Street, Suite 2220, Austin, TX 78701) and San Antonio, TX (303 Pearl Parkway, Suite 220, San Antonio, TX 78215). (Exhibit 21; Exhibit 22.)

- Saks Fifth Avenue, with a store at 7400 San Pedro Avenue, San Antonio, TX 78216. (Exhibit 23.)

31.     As further detailed below, Alfresco and Blue Fish's use, provision of, offer for sale, sales, and advertising of ECM software within this judicial district infringe the Patents-in-Suit. Alfresco's certified partners infringe the Patents-in-Suit by using Alfresco's ECM software within this judicial district. Alfresco's customers infringe the Patents-in-Suit by using Alfresco's ECM software within this judicial district.

32.     Alfresco encourages partners -- and Alfresco and Blue Fish encourage customers -- to use infringing software at least by making its content services available on its website, widely advertising those services, providing applications that allow partners and users to access those services, and providing technical support to users.

33.     Because Alfresco and Blue Fish actively target customers served by OpenText and OpenText offices in Austin and San Antonio, Alfresco and Blue Fish's infringement adversely impacts the over one hundred OpenText employees who live and work in and around this judicial

district. Indeed, Alfresco and Blue Fish openly, notoriously, and deliberately targeted their infringing ECM software against OpenText's patented ECM offerings, including Documentum:

## Why Alfresco?

## Alfresco has a Great ROI

With the current economic climate, our clients are looking for ways to reduce the TCO of their ECM infrastructure. Several of our clients are migrating all or part of their content from expensive traditional ECM platforms (Documentum, FileNet,

OpenText) to other platforms that they feel have lower TCO. I've talked to at least three pharmaceutical companies, for example, that are moving part of their content out of Documentum because they feel that it's overkill for their needs. The content in question isn't regulated and isn't used very frequently, and they just can't justify the cost of Documentum licenses for it. One of my clients told me, "It's like keeping your Timex watch in a bank vault. That makes sense for a Rolex, but it's overkill for a Timex." These companies are continuing to use Documentum for their most critical content, but they are using other platforms for less critical content. OSHA, NYPD, Morgan Stanley, and Cisco are just some of the companies that have transitioned from one of the "Big Three" ECM vendors to Alfresco.

(Exhibit 24.)

**THE PATENTS-IN-SUIT**

U.S. Patent No. 7,627,726

34.     U.S. Patent No. 7,627,726 ("the '726 patent"), entitled "Systems and Methods for Managing Content Having A Retention Period on a Content Addressable Storage System," was duly and legally issued on December 1, 2009. A true and correct copy of the '726 patent is attached

as Exhibit A.

35.    The '726 patent is generally directed to an improvement to the operation of computer data storage systems and methods for storing content and its associated metadata in accordance with a retention policy. The '726 patent discloses and specifically claims inventive and patentable subject matter that represents significant improvements over conventional ECMs that were available at the time of filing of the '726 patent and are more than just generic apparatus or software components performing conventional activities.

36.    "Enterprise content exists in many forms, such as text documents, spreadsheets, images, e-mail messages, and fixed content such as schematics, records, and scanned images." ('726 patent, 1:20-22.) At the time of filing of the '726 patent, compliance regulations and the need to access and supply files and records in electronic form using ECM systems motivated many companies to use "content management systems which employ storage servers for storing and archiving content." ('726 patent, 1:36-39.) "These content management systems allow for much more flexibility than traditional localized storage," allowing for relationships between content to be established, publication of content through multiple channels, or remote access of content. ('726 patent, 1:39-47.) However, these multiple storage server systems had downsides as a function of their distributed nature; for example, these systems were more vulnerable to employees or hackers stealing and/or destroying content, located using the file path. ('726 patent, 1:48-55.) As a solution, some systems chose to store content on write once, read many ("WORM") devices, in order to prevent easy destruction of the content by employees or hackers. ('726 patent, 1:48-57.) However, when using this type of storage, "if it is no longer necessary to store content, the only way to destroy the content is to literally break the optical platter that is typically used for WORM storage." ('726 patent, 1:57-60.) Thus, prior art to the '726 patent proposed the use of content addressable

storage, in which the system relies on a content address for describing the physical location of the content, instead of file paths. ('726 patent, 1:61-65.) The content address identified not only where the content was stored, but also other properties of the content called metadata, such as the content name, date created, date last accessed, author, permissions, etc. ('726 patent, 2:1-6.) "By storing the metadata along with the content, it is easy to verify the content, and determine other properties of the content simply by accessing the metadata." ('726 patent, 2:11-14.) However, a persistent disadvantage of these prior art ECM systems "is that there [was] no method for managing the retention of the content or metadata," that could be enforced by the system itself and thus preventing employees or hackers from circumventing it. ('726 patent, 2:18-22.)

37.     The '726 patent's claimed system/method for storing content having a retention period solves this content management problem by reciting specific and significant improvements over the conventional ECM method/system, such as, for example, allowing an administrator to set certain properties, or metadata, of the content—including a retention policy—which will be persisted with the content when it is stored. ('726 patent, 2:23-27.) This retention policy defines a point in time, after which the content and all associated metadata may be deleted from the storage system, which can then be enforced by the system itself. ('726 patent, 2:30-33.) The '726 patent also provides methods for enforcing which storage system is used based on the object type, such that documents of certain types can be directed to certain data storage facilities ('726 patent, 5:11-17.) This is important for compliance purposes, as in many cases certain types of data must be stored within certain jurisdictions, while others do not, and many distributed storage systems have distributed storage policies that can cross borders and jurisdictional boundaries. Without these protections enforceable by the system, documents could be stolen, destroyed, or stored in improper locations that violate data governance regulations.

38.     The '726 patent's claimed method is achieved by using a "storage object" and "plugin library" configured to pass the user-defined metadata, including the retention period, and the content to the storage system. ('726 patent, 2:35-38.) "The storage object and plugin library are configured to interface with a particular type of storage system, such that when a content management server identifies a storage object associated with a particular storage system, it loads the appropriate plugin library for passing the content and metadata to the particular storage system." ('726 patent, 2:38-42.) The claims of the '726 patent are directed to these specific improvements in the capabilities of ECM systems and not to an abstract process that merely invokes these devices as tools.

39.     Given the state of the art at the time of filing of the '726 patent, the claim limitations of the '726 patent, both individually and as an ordered combination, were not conventional, well-understood, or routine. The '726 patent discloses, among other things, an unconventional technological solution to an issue arising specifically in the context of ECM systems using distributed server and storage system architectures. The solution implemented by the '726 patent provides a specific and substantial improvement over prior ECM systems, including by introducing novel elements combined in an unconventional manner directed to improving the function and working of ECM systems such as the claimed "creating a content object for the content . . . defining object properties for the content . . . wherein:  . . . the content management server transmits the content and object properties to the selected storage system through the determined plugin, wherein the determined plugin comprises specific application program interfaces to the selected storage system, configured to allow the object properties to be set including the retention period to be defined." ('726 patent, cl. 1.) As discussed above, these claimed elements and their

combination were not present in the prior art, and represent unconventional and concrete improvements over the prior art.

40.     Consistent with the problem identified by the '726 patent being rooted in ECM systems and associated multiple distributed storage systems, the '726 patent's solutions are also rooted in the same technology that cannot be performed with pen and paper or in the human mind. This technical context is reflected in the '726 patent's claims, as described above. A person having ordinary skill in the art at the time of the invention of the '726 patent would not have understood that the invention could or would be performed solely in the human mind or using pen and paper. Using pen and paper would ignore the stated purpose of the '726 patent and the problem the patented technology was specifically designed to address—allowing the ECM system with distributed storage, servers, and access to enforce regulatory controls on the data within its systems. Doing so would also run counter to the inventors' detailed description of the inventions, and the language of the claims, and be a practical impossibility.

<u>U.S. Patent Nos. 7,818,300 & 8,712,980</u>

41.     U.S. Patent No. 7,818,300 ("the '300 patent"), entitled "Consistent Retention and Disposition of Managed Content and Associated Metadata," was duly and legally issued on October 19, 2010. A true and correct copy of the '300 patent is attached as Exhibit B.

42.     U.S. Patent No. 8,712,980 ("the '980 patent"), entitled "Consistent Retention and Disposition of Managed Content and Associated Metadata," was duly and legally issued on April 29, 2014. A true and correct copy of the '980 patent is attached as Exhibit C. The '980 patent is a continuation of Application No. 11/370,292, which issued as the '300 patent.

43.     The '300 and '980 patents are generally directed to a system and method for consistently retaining and disposing of managed content and the associated metadata alike. The

'300 and '980 patents disclose and specifically claim inventive and patentable subject matter that represents significant improvements over conventional ECM systems that were available at the time of filing of the '300 and '980 patents, and are more than just generic apparatus or software components performing conventional activities.

44.     At the time of filing of the '300 and '980 patents, and as discussed above, applications or platforms, such as ECM systems, were being used to preserve and dispose of files and records. ('300 patent, 1:7-14.) "[I]n a typical managed content system each item of stored content, e.g., each file or other file system object, etc., has associated with it metadata used to track, locate, control and manage access to, and/or provide one or more other content management functions with respect to the corresponding content item." ('300 patent, 1:20-25.) As discussed above, in connection with the '726 patent, an enterprise or other content owner may be required and/or may desire to enforce retention policies or other requirements to the underlying content item. ('300 patent, 1:25-30.) However, at the time of the filing of the '300 and '980 patents, there was "a need for a way to ensure that items of content and their associated metadata are retained and disposed of in parallel." ('300 patent, 1:30-32.)

45.     The '300 patent's claimed system/method for consistent retention and disposition of managed content and associated metadata enforced by the system itself,  solves this problem by reciting specific and significant improvements over the conventional content management method/system, such as including in the retention policy, a "policy for placing a hold on content to ensure it is retained in a location during a hold period" and "preventing metadata associated with the selected item of content from being viewed during the period that the selected item of content is placed on hold." ('300 patent, cl. 1.) For example, the specification discloses "hold logic," which enables the system to enforce the holds and prevents content under hold and the

associated metadata from being accessed, viewed, moved, deleted, and/or changed at a time when the content is in a "hold" status. ('300 patent, 4:56-59.) The dependent claims also allow for configuring the associated metadata into "one or more content objects" and "each content object includes object-oriented software code" so as to effectively implement selective application of retention policies. ('300 patent, cl. 7, FIGs. 5A-5D.) These content objects, document objects, and retainer objects allow computers to perform tasks that it could not do before—that is, effectively apply retention policies over one or more selected items in a database. ('300 patent, FIGs. 5A-5D, 5:23-29.) Thus, a processor can be configured to "automatically retain the selected item of content and its associated metadata in parallel" and ensure that the metadata associated with the content item is retained, deleted, or hidden "in accordance with the retention policy." ('300 patent, cl. 1.) The claims of the '300 patent are directed to these specific improvements in the capabilities of content management systems and applications, not to an abstract process that merely invokes these devices as tools.

46.     Similarly, the '980 patent's claimed system/method for consistent retention and disposition of managed content and associated metadata solves this problem by reciting specific and significant improvements over the conventional content management method/system, such as storing the content item in "a content store" and automatically retaining the associated metadata "in parallel in accordance with the retention policy, wherein the associated metadata is stored in a metadata store"; in other words, for example, separating the metadata and its storage from the storage of the object it is associated with. ('980 patent, cl. 1.) A dependent claim discloses configuring the metadata into one or more of "a content object, a document object, and a retainer object" to facilitate the selective application of a retention policy in parallel. ('980 patent, cl. 7, FIGs. 5A-5D.) The claims of the '980 patent are directed to these specific improvements in the

capabilities of content management systems and applications, not to an abstract process that merely invokes these devices as tools.

47.    Given the state of the art at the time of filing of the '300 and '980 patents, the claim limitations of the '300 and '980 patents, both individually and as an ordered combination, were not conventional, well understood, or routine.

48.    The '300 and '980 patents disclose, among other things, unconventional technological solutions to an issue arising specifically in the context of managing content and associated metadata governed by a retention policy in ECM systems. The solution implemented by the '300 patent provides a specific and substantial improvement over prior content management systems, including by introducing novel elements combined in an unconventional manner directed to improving the function and working of electronic devices such as the claimed "using a processor to automatically retain the selected item of content and its associated metadata in parallel in accordance with the retention policy, including: . . . wherein the retention policy includes a policy for placing a hold on content." ('300 patent, cl. 1.) As discussed above, these claimed elements and their combination were not present in the prior art, and represent unconventional and concrete improvements to the operation of ECM systems over the prior art.

49.    The solution implemented by the '980 patent provides a specific and substantial improvement over prior content management systems, including by introducing novel elements combined in an unconventional manner directed to improving the function and working of electronic devices such as the claimed "content [ ] stored in a content store; and automatically retaining the selected item of content and its associated metadata in parallel in accordance with the retention policy, wherein the associated metadata is stored in a metadata store . . . applying the retention policy both to the selected item of content and to its associated metadata." ('980 patent,

cl. 1.) As discussed above, these claimed elements and their combination were not present in the prior art, and represent unconventional and concrete improvements over the prior art.

50.     Consistent with the problem identified by the '300 and '980 patents being rooted in content management systems, the '980 patent's solutions are also rooted in the same technology that cannot be performed with pen and paper or in the human mind. This technical context is reflected in the '300 and '980 patents' claims, as described above.

51.     A person having ordinary skill in the art at the time of the invention of the '300 and '980 patents would not have understood that the inventions could or would be performed solely in the human mind or using pen and paper. Using pen and paper would ignore the stated purpose of the '300 and '980 patents and the problem the patented technology was specifically designed to address. Doing so would also run counter to the inventors' detailed description of the inventions, and the language of the claims, and be a practical impossibility.

<u>U.S. Patent No. 8,370,388</u>

52.     U.S. Patent No. 8,370,388 ("the '388 patent"), entitled "Mandatory Access Control List for Managed Content," was duly and legally issued on February 5, 2013. A true and correct copy of the '388 patent is attached as Exhibit D.

53.     The '388 patent is generally directed to a system and method for restricting user access to managed content based on that user's membership or role within a specified group. The '388 patent discloses and specifically claims inventive and patentable subject matter that represents significant improvements over conventional ECM systems that were available at the time of filing of the '388 patent and is more than just generic apparatus or software components performing conventional activities.

54. At the time of filing of the '388 patent, content management systems restricted access to electronically stored content based on whether a user (individual, system, application, process, etc.) was included, individually or by virtue of membership in a group, in an "access control list" ("ACL") associated with the content item. ('388 patent, 1:15-21.) That is, "the rights of a particular user to access a content item typically has been determined based on the union of the respective rights (if any) the user has by virtue of the individual's personal identity, role, group membership, etc." ('388 patent, 1:21-25.) "In some contexts, however, it may be necessary and/or desired to control access in other and/or additional ways," such as security level restrictions, geographic restrictions, product division restrictions, etc. ('388 patent, 1:29-42.) Thus, there was "a need for an effective way to enforce mandatory and/or supplemental access control requirements with respect to a body of managed content." ('388 patent, 1:43-45.) The '388 patent describes and claims systems and methods for improving the operation of electronic data storage systems by allowing the system to enforce these mandatory and/or supplemental controls across multiple distributed data stores with multiple access points and users.

55. The '388 patent's claimed system and method for using a mandatory access control list for managed content solves this problem by reciting specific and significant improvements over the conventional access restriction method/system, such as, an "access control list" associated with the content item in which there may be restrictions based on "required group entr[ies]," as well as "one or more other entries that are not required group entries, and wherein each of the other entries specifies a type of access granted." ('388 patent, cl. 1.) Dependent claims further explain that such an access control list may comprise "a software object stored persistently in a metadata store." ('388 patent, cl. 5, FIGs. 8A-8D.) The claims of the '388 patent are directed to these specific

improvements in the capabilities of access control in content management systems, not to an abstract process that merely invokes these devices as tools.

56.     Given the state of the art at the time of filing of the '388 patent, the claim limitations of the '388 patent, both individually and as an ordered combination, were not conventional, well understood, or routine. The '388 patent discloses, among other things, an unconventional technological solution to an issue arising specifically in the context of access control within content management applications. The solution implemented by the '388 patent provides a specific and substantial improvement over prior access control methods and content management systems, including by introducing novel elements combined in an unconventional manner directed to improving the function and working of electronic devices such as the claimed determining of "whether access to the content item is limited to members of any required group associated with the content item based on whether an access control list associated with the content item includes a required group entry specifying a required group . . . and wherein each of the other entries specifies a type of access granted . . . in the event that access to the content item is not limited to members of any required group, determining access based on the one or more other entries of the access control list." ('388 patent, cl. 1.) As discussed above, these claimed elements and their combination were not present in the prior art, and represent unconventional and concrete improvements over the prior art.

57.     Consistent with the problem identified by the '388 patent being rooted in content management systems, the '388 patent's solutions are also rooted in the same technology that cannot be performed with pen and paper or in the human mind. This technical context is reflected in the '388 patent's claims, as described above.

58.     A person having ordinary skill in the art at the time of the invention of the '388 patent would not have understood that the inventions could or would be performed solely in the human mind or using pen and paper. Using pen and paper would ignore the stated purpose of the '388 patent and the problem the patented technology was specifically designed to address. Doing so would also run counter to the inventors' detailed description of the inventions, and the language of the claims, and be a practical impossibility.

59.     Open Text Corporation is the holder of all right, title, and interest in the '762, '300, '980 and '388 patents (collectively, the "Patents-in-Suit"), including all rights to collect damages throughout the period of Defendants' infringing acts, *all* rights to prevent others from making, having made, using, offering for sale, or selling products or services covered by such patents, and all rights to enforce the Patents-in-Suit.

<u>Documentum</u>

60.     The Patents-in-Suit cover aspects of OpenText's ECM software, including features of Documentum. OpenText marks its products with the Patents-in-Suit. (Exhibit 25.) Documentum, which was owned by EMC around the time of the priority date of the Patents-in-Suit (Exhibit 26), received numerous accolades relating to metadata, data storage, and compliance features covered by certain of the Patents-in-Suit, further supporting that the Patents-in-Suit implement unconventional technological solutions to issues arising specifically in the context of electronic content management applications and systems. For example, "EMC Documentum ECI Services addresses the most time-consuming problems that employees face each day finding, gathering, and sharing needed information, when it is stored in multiple formats, locations, and languages. . . . Documentum ECI Services can significantly boost employee productivity by streamlining lengthy research and delivering information in a consistent, organized format, making

it a powerful tool for global information discovery and knowledge sharing." (Exhibit 27.) "The Documentum platform provided built-in security, versioning, workflow and lifecycle management, from creation to archiving, of all types of unstructured content across the enterprise." (Exhibit 28.) Using the Documentum ECM platform, with content archiving and retrieval solutions, "organisations can capture, manage, store, archive and ultimately dispose of all types of content . . . while making it readily available, secure and re-usable." (Exhibit 29.) "Global firms rely on Documentum, EMC for solutions that enable compliance." (Exhibit 29.)

## ACCUSED PRODUCTS

61.     Alfresco's Enterprise Content Management (ECM) Software ("the Accused Product") provides a platform for enterprises and their users to store, manage, and access content. ECM includes, without limitation, Alfresco's Content Services and Alfresco One as a medium for accessing its ECM capabilities, wherein Alfresco One may operate at least in hybrid, cloud, on-premise, or mobile device environments. On information and belief, each of these implementations, whether enterprise or community editions and/or whether accessed via computer or mobile device, operate similarly for purposes of determining infringement.

## FIRST CAUSE OF ACTION
### (INFRINGEMENT OF THE '726 PATENT)

62.     OpenText realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

63.     Alfresco and Blue Fish, both alone and together, have infringed and continue to infringe one or more claims of the '726 patent in violation of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States, and will continue to do so unless enjoined by this Court. Alfresco directly infringes at least claim 1 of the '726 patent by making, using, selling, and/or offering to sell at least the accused Alfresco ECM Software. Blue Fish directly infringes at least

claim 1 of the '726 patent by, without limitation, using at least the accused Alfresco ECM Software. Alfresco's ECM includes, without limitation, Records Management capabilities provided by a Governance Services application, wherein a user may store a file as a record with retention scheduling and managing functionalities. The records, being a kind of archive, may be stored in any one of a plurality of third-party cloud service stores used for additional storage capacity.

64.     For example, claim 1 of the '726 patent recites:

1. A method for storing content with retention management properties on at least one of a plurality of storage systems, the method comprising:

creating a content object for the content;

defining an object type for the content object, the object type defining how the content will be stored, and on which of the plurality of storage systems the content will be stored;

defining object properties for the content;

transmitting the content object, including the content and the object properties, to a content management server, wherein:

the content management server selects at least one storage system from the plurality of storage systems on which to store the content object based on the content object type;

the content management server associates the object properties, including a retention period, with the content;

the content management server determines a plugin configured to communicate with the selected storage system;

the content management server transmits the content and object properties to the selected storage system through the determined plugin, wherein the determined plugin comprises specific application program interfaces to the selected storage system, configured to allow the object properties to be set including the retention period to be defined, such that they are stored on the selected storage system; and

the content management server stores the object properties including the retention period in a relational database.

65.     Alfresco encourages customers to use its ECM Software in a way that infringes each limitation of claim 1 of the '726 patent at least by selling and offering to sell the infringing software, making its content services available on its website, providing applications that allow users to access those services, widely advertising those services, and providing technical support and instructions to users.

66.     Blue Fish encourages customers to use Alfresco's ECM software in a way that infringes each limitation of claim 1 of the '726 patent at least by advertising Alfresco's ECM software on its website, training customers on how to use Alfresco ECM software, recommending Alfresco ECM software, installing and architecting Alfresco's ECM software, and migrating customer's content from other ECM platforms to Alfresco's ECM software platform.

67.     To the extent the preamble is construed to be limiting, Alfresco's ECM software provides a method for storing files ("content") with retention management properties on one or more content stores or third-party cloud service stores ("plurality of storage systems").

### Records Management FAQ

| Q. What is Records Management? | + |
|---|---|
| Q. Why is Records Management important? | + |
| Q. What are the benefits of Records Management? | + |
| Q. How can Alfresco help me with Records Management? | − |
| A. Alfresco Governance Services provides Records Management fully integrated into Alfresco Content Services. This makes it easy to work with files and have them declared as records at the right time – without changing the way your users work. | |

(*See* https://www.alfresco.com/information-governance/records-management.)

Alfresco Governance Services 3.3 » Alfresco Governance Services » Using Governance Services

# Life cycle of a record

You can create a record either by uploading it to the Records Management File Plan, or by declaring a file in another Alfresco site as a record.

When you have added all required metadata to a record you can mark the record as complete. This makes it an active part of the File Plan, and subject to the rules of the retention schedule it is associated with.

It then goes through various time and event based steps such as cut off and retention, until it is eventually transferred elsewhere, or destroyed, according to its retention schedule.

(*See* https://docs.alfresco.com/ags/concepts/rm-record-lifecycle.html?m=2.)

68.    Alfresco's ECM provides a method creating a content object for the content to be stored. Once the Content Store Selector is configured in Alfresco's ECM according to the procedure in Alfresco's Administrator Guide, a user may add a property to uploaded files, which allows a user to select the content store in which the file is stored:

## Content store selector

The content store selector provides a mechanism to control the store used for the content file associated with a particular content item.

⚠️    The content store selector, is not supported as 'Encrypted content store'.

By applying the `cm:storeSelector` aspect and setting its `cm:storeName` property to the name of a selectable store, the content will be automatically moved from its current location to the new store. The store does not, therefore, store content itself, it defines and manages those stores that are available for selection.

This allows storage polices to be implemented to control which underlying physical storage is used, based on your applications needs or business policies.

(*See* PDF Administrator Guide, pg. 468, 470.)

69.    Alfresco's ECM provides a method defining an object type for the content object, the object type defining how the content will be stored, and on which of the plurality of storage systems the content will be stored. For example, Alfresco's ECM provides a plurality of content stores—each specializing in storing different kinds of objects—including at least Default File Store (used for storing files with incremental backup), Amazon S3 (used for storing additional files which were not accessed recently over the cloud), and Centera (used for storing rarely accessed

27

files with longer retention periods).[1] "The Content Store Selector provides a mechanism to control the store used for the content file associated with a particular content item."[2] "By applying the cm:storeSelector aspect and setting its cm:storeName property to the name of a selectable store, the content will be automatically moved from its current location to the new store. . . . This allows storage policies to be implemented to control which underlying physical storage is used," such as "fast (and expensive) local disk" or "lower cost, slower storage."[3]

70.     Alfresco's ECM provides a method for adding or editing ("defining") object properties for the content:

Alfresco Governance Services 3.3 » Alfresco Governance Services » Getting started with Governance Services » Getting started for Records Management Users

# Adding record metadata

All records in the File Plan have metadata, which you can think of as records properties.
If you associate the record with a specific type by selecting the **Add Record Metadata** option then additional metadata options are required for the record. You need to complete all the required metadata before you can set a record to complete.

The **Add Record Metadata** option is only available in DoD 5015.2-STD compliant Records Management sites.

✏️  Adding record metadata isn't mandatory, but can be useful to allow additional metadata to be added against a file.

1. Hover over an incomplete record in the File Plan and click **More** then **Add Record Metadata**.

💡  For non-electronic records the **Add Record Metadata** is available as soon as you hover over them, you don't need to click **More**.

The available record types are displayed.

2. Select the appropriate record type.

| Record type | Description |
| --- | --- |
| Web Record | A web page. |
| Scanned Record | A file that is scanned into the Records Management system. |
| PDF Record | A PDF file. |
| Digital Photograph Record | A photographic image file. |

💡  You can select multiple items in the standard multi-select way.

---

[1] https://docs.alfresco.com/4.2/concepts/cs-file.html (describing the default content store);
https://docs.alfresco.com/4.2/concepts/S3content-intro.html (describing Amazon S3);
https://docs.alfresco.com/4.2/concepts/cs-centera.html (describing Centera).
[2] https://docs.alfresco.com/4.2/concepts/manage-cs-home.html
[3] https://docs.alfresco.com/4.2/concepts/store-manage-content.html

(*See* https://docs.alfresco.com/ags/tasks/rm-metadata-add.html.)

71. Alfresco's ECM therefore provides a method in which the content object, including the content and object properties, are transmitted to a content management server.[4]

72. As described above, Alfresco's ECM server selects at least one storage system from the plurality of storage systems on which to store the content object based on the content object type. Specifically, "[t]his can be controlled by the application by applying a special aspect that determines into which store the content will go."[5]

73. Alfresco's ECM provides a method in which the ECM server associates the object properties, including a retention schedule, with the content file. This association is demonstrated at least by the fact that, when a content file is transferred, an audit trail and metadata (including the retention schedule) are retained. This retention schedule specifies a particular retention period by setting a retention cutoff or date:

Alfresco Governance Services 3.3 » Alfresco Governance Services » Getting started with Governance Services » Getting started for Records Management Users

# Processing records

Retention steps are generally completed manually, though retain and cut off steps can be completed automatically by a system process that is run daily. You can also set up a rule to complete steps automatically.

If a retention step is complete (the time period is finished or the required events have been completed), then additional options are available for folders or records, dependant on whether the retention schedule is set to folder or record level.

If you apply an action to a folder then it will also be applied to all records within the folder.

Hover over a folder/record in the File Plan and click the action that is available to move to the next step in the retention schedule.

(*See* https://docs.alfresco.com/ags/tasks/rm-dispsched-actions.html.)

74. Alfresco's ECM server determines a plugin configured to communicate with the selected storage system:

---

[4] https://docs.alfresco.com/ags/tasks/rm-record-declare.html
[5] https://docs.alfresco.com/4.2/concepts/integration-archive.html

Alfresco One 4.2.8 » Administering » Managing content stores » Content store types

# Alfresco S3 content store

The Alfresco S3 Connector is an add-on module that provides an alternative content store. It uses Amazon's Simple Storage Service (S3) as the storage mechanism for Alfresco, allowing for virtually unlimited and inexpensive storage.

(*See* https://docs.alfresco.com/4.2/concepts/cs-s3connector.html; *see also* https://docs.alfresco.com/4.2/concepts/cs-centera.html.)

      75.    Alfresco's ECM server transmits the content and object properties to the selected storage system through the determined plugin, wherein the determined plugin comprises specific application program interfaces to the selected storage system:

Alfresco One 4.2.8 » Installing

# Installing and configuring Alfresco S3 Connector

The Alfresco S3 Connector is an add-on module that provides an alternative content store.

Using an Alfresco Module Package, the connector supplies a new content store which replaces the default file system-based implementation for the standard and deleted content stores. The content store implementation is responsible for reading and writing content streams using the S3 API, however, in order to improve performance a local Caching Content Store is used which uses the local disk to cache recently-used content items.

✏️ By default the module configures the caching content store to use a maximum of 50GB of disk, with no limit on individual file sizes.

The Alfresco S3 Connector uses a single S3 bucket and all content is stored in that bucket within one of the following directories:

```
<bucket-root>/contentstore for the main content store
<bucket-root>/contentstore.deleted for the 'deleted' content store
```

(*See* https://docs.alfresco.com/4.2/concepts/S3content-intro.html; https://docs.alfresco.com/4.2/concepts/centera-intro.html ("The Alfresco EMC Centera Connector module addresses the Centera store directly through its native API.").)

      76.    Alfresco's ECM is configured to allow the object properties to be set, including the retention period to be defined, such that they are stored on the selected storage system. For example, the Centera content store linked to the ECM via Centera connector allows retention policies to be set for the stored files:

# Installing and configuring the Alfresco EMC Centera Connector

The Alfresco EMC Centera Connector module provides integration between Alfresco and Content Addressable Storage (CAS) systems.

CAS systems store and locate files using addresses based on the file's content, rather than a physical location address. CAS systems are typically used for long-term storage of content that does not require frequent access or where it is stored for regulatory purposes.

When a CAS system stores content, it generates a unique key or hash, which is based on the content. The hash is generated from the content properties, such as the name, date, or content itself.

An example hash might be EQM2GC012MC77e72B24N2MMFU59G418ACSAIE70BAS340TN3E1JJL. This hash is then used as the address of the stored content, and which is then used to retrieve the content. When a request is made to the CAS using this address, it returns the associated content.

The benefits of using CAS systems are:

- Content can be located easily even in large volumes of data
- Content integrity: if stored content has been altered then there is a mismatch between the hash passed as the address and hash computed on the fly
- Avoids redundancy by recognizing that the hash is already present and so does not store it again

The Alfresco EMC Centera Connector module addresses the Centera store directly through its native API.

The module uses a series of properties to control the way that you access the store. A feature of this module allows you to set retention policies, such as, preventing content from being deleted for a period of time (for example, retaining invoices for seven years).

The Alfresco EMC Centera Connector module can be applied to Alfresco Enterprise 4.2.0 or later.

(*See* https://docs.alfresco.com/4.2/concepts/centera-intro.html.)

77.    Alfresco's ECM server stores the object properties, including the retention period, in a relational database. For example, the retention schedule is associated along with the metadata to the stored content, and the metadata is stored in a relational database:

Alfresco One 5.1.5 » Developer guide » Architecture

# Repository concepts

It is important as a developer to have a good understanding of the fundamental concepts of Alfresco when implementing extensions. Important concepts covered include repository, nodes, stores, types, aspects and so on.

*Key Concepts*

All files that are stored in the Alfresco content management system are stored in what is referred to as the **repository**. The repository is a logical entity that consists of three important parts:

1. The physical content files that are uploaded
2. The index files created when indexing the uploaded file so it is searchable
3. The metadata/properties for the file, which are stored in a relational database management system (RDBMS).

When a file is uploaded to the Alfresco repository it is stored on disk in a special directory structure that is based on the date and time of the upload. The file name is also changed to the UUID (Universally Unique Identifier) assigned to the file when it is added to the repository. The file's metadata is stored in an RDBMS such as PostgreSQL. Indexes are also stored on the disk. When the file is added to the repository it is stored in a folder, and in the Alfresco a folder has domain specific metadata, rules, and fine grained permissions. The top folder in the Alfresco repository is called **Company Home**, although it will be referred to with the name **repository** in the Alfresco Share user interface.

(*See* https://docs.alfresco.com/5.1/concepts/dev-repository-concepts.html.)

78.     Each claim in the '726 patent recites an independent invention. Neither claim 1, described above, nor any other individual claim is representative of all claims in the '726 patent.

79.     Alfresco and Blue Fish have been aware of the '726 patent since at least the filing of this Complaint. Further, OpenText marks its products with the '726 patent.

80.     Alfresco actively induced and is actively inducing infringement of at least claim 1 of the '726 patent with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b), by activities relating to selling, marketing, advertising, promotion, support, and distribution of its ECM system in the United States.

81.     Blue Fish actively induced and is actively inducing infringement of at least claim 1 of the '726 patent with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b), by activities relating to at least marketing, advertising, promotion, support, training, and installation of

Alfresco's ECM system in the United States.

82.    Alfresco encourages, instructs, directs, and/or requires third parties—including its certified partners or customers—to use the infringing ECM software, as described above.

83.    Blue Fish encourages, instructs, and/or directs third parties to use the infringing ECM software, as described above.

84.    Alfresco's partners, customers, and end users of its ECM software directly infringe at least claim 1 of the '726 patent, at least by using the accused ECM software, as described above.

85.    Blue Fish's customers of Alfresco's ECM software directly infringe at least claim 1 of the '726 patent, at least by using the accused ECM software, as described above.

86.    For example, on information and belief, Alfresco shares instructions, guides, and manuals, which advertise and instruct third parties on how to use the ECM software to store content in accordance with a retention policy, as described above, including at least customers and partners such as Blue Fish Development Group. On further information and belief, Alfresco and Blue Fish also provide customer service or technical support to purchasers of the infringing ECM software, which directs and encourages customers to use the ECM software in an infringing manner.

87.    For past infringement, OpenText has suffered damages, including lost profits, as a result of Defendants' infringement of the '726 patent. Defendants are therefore liable to OpenText under 35 U.S.C. § 284 for past damages in an amount that adequately compensates OpenText for Defendants' infringement, but no less than a reasonable royalty.

88.    For ongoing and future infringement, OpenText will continue to suffer irreparable harm unless this Court preliminarily and permanently enjoins Defendants, their agents, employees, representatives, and all others acting in concert with Defendants from infringing the '726 patent. In the alternative, OpenText is entitled to damages in lieu of an injunction, in an amount consistent

with the facts, for future infringement. Defendants' continued infringement, at least since they had notice of the '726 patent, is knowing and willful. Defendants will be adjudicated infringers of a valid patent and, thus, Defendants' future infringement will be willful as a matter of law.

## SECOND CAUSE OF ACTION
### (INFRINGEMENT OF THE '300 PATENT)

89.     OpenText realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

90.     Alfresco and Blue Fish, both alone and together, have infringed and continue to infringe one or more claims of the '300 patent in violation of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States, and will continue to do so unless enjoined by this Court. Alfresco directly infringes at least claim 1 of the '300 patent by making, using, selling, and/or offering to sell at least the accused Alfresco ECM Software. Blue Fish directly infringes at least claim 1 of the '300 patent by, without limitation, using at least the accused Alfresco ECM Software. Alfresco's ECM includes, without limitation, Records Management capabilities provided by a Governance Services application, wherein a user may store a file as a record with retention scheduling and managing functionalities. The records, being a kind of archive, may be stored in any one of a plurality of third-party cloud service stores used for additional storage capacity.

91.     For example, claim 1 of the '300 patent recites:

1. A method of managing content, comprising:

receiving an indication that a retention policy is to be applied to a selected item of content comprising a body of managed content; and

using a processor to automatically retain the selected item of content and its associated metadata in parallel in accordance with the retention policy, including:

(1) preventing metadata associated with the selected item of content from being

deleted or otherwise finally disposed of until the selected item of content has been deleted or otherwise finally disposed of in accordance with the retention policy;

(2) ensuring that metadata associated with the selected item of content is deleted or otherwise finally disposed of once the selected item of content has been deleted or otherwise finally disposed of in accordance with the retention policy; and

(3) preventing metadata associated with the selected item of content from being viewed during the period that the selected item of content is placed on hold, wherein the retention policy includes a policy for placing a hold on content to ensure it is retained in a location during a hold period.

92.     Alfresco encourages customers to use its ECM Software in a way that infringes each limitation of claim 1 of the '300 patent at least by selling and offering to sell the infringing software, making its content services available on its website, providing applications that allow users to access those services, widely advertising those services, and providing technical support and instruction to users.

93.     Blue Fish encourages customers to use Alfresco's ECM software in a way that infringes each limitation of claim 1 of the '300 patent at least by advertising Alfresco's ECM software on its website, training customers on how to use Alfresco ECM software, recommending Alfresco ECM software, installing and architecting Alfresco's ECM software, and migrating customers' content from other ECM platforms to Alfresco's ECM software platform.

94.     To the extent the preamble is construed to be limiting, Alfresco's ECM software includes "Alfresco Records Management," which provides a method of managing content.[6]

95.     Alfresco's ECM provides a method for managing content that involves receiving an indication that a retention policy is to be applied to a selected item of content comprising a body

---

[6] https://docs.alfresco.com/rm2.2/references/whats-new-rm.html

of managed content. For example, Alfresco's records management allows users to enter a retention policy for categories of documents, indicating that the policy is to be applied to all records within that category. Additionally, when the user uploads or marks a document as a record within that category or folder, the user indicates that the policy should be applied to that document. The ECM receives the user's indication that the policy should be applied.[7]

96.    Alfresco's ECM provides a method for managing content which may operate in hybrid, cloud, on-premise, or mobile device environments, each of which rely on the processing power of a computer processing unit or processor. Thus, Alfresco's ECM uses a processor to automatically retain the selected item of content and its associated metadata in parallel in accordance with the retention policy specified by the user in the manner discussed above. That is, after the user defines the retention schedule and indicates to which content it should be applied, the retention policy is applied to both content and its metadata in parallel, and the system saves the content and its associated metadata in the system.[8]

97.    On information and belief, Alfresco's ECM provides a method for managing content including preventing metadata associated with the selected item of content from being deleted or otherwise finally disposed of until the selected item of content has been deleted or otherwise finally disposed of in accordance with the retention policy. For example, Alfresco's ECM enables a user to specify a disposition schedule, which states how the record should be retained and disposed.[9] In particular, users are able to choose whether or not a record's metadata is retained or destroyed upon the conclusion of a retention schedule; by default, the metadata is destroyed when the retention schedule ends.[10] Thus, Alfresco's ECM further provides a method

---

[7] https://youtu.be/KQpUJNVIw5E
[8] https://youtu.be/KQpUJNVIw5E
[9] https://docs.alfresco.com/4.1/tasks/rm-dispschedule-create.html
[10] https://docs.alfresco.com/ags/tasks/rm-dispsched-actions.html

for managing content that includes ensuring that metadata associated with the selected item of content is deleted or otherwise finally disposed of once the selected item of content has been deleted or otherwise finally disposed of in accordance with the retention policy.

| Destroy | Removes the record/folder content from the Records Management system. If the **Maintain record metadata after destroy** option is selected in the retention schedule, then a visual representation of the record, an audit trail, and metadata is retained in the File Plan.<br><br>If the record was declared from a file in an Alfresco site then the file is also removed. |
|---|---|

(*See* https://docs.alfresco.com/ags/tasks/rm-dispsched-actions.html.)

98.   Alfresco's ECM provides a method for managing content including preventing metadata associated with the selected item of content (i.e., record metadata) from being viewed during the period that the selected item of content is placed on hold. For example, when a hold is applied to one or more record documents or folders, particular metadata associated with the record or folder is no longer visible to a user and a user is unable to use the "copy" option. Moreover, the record is frozen and retention policy suspended or ignored while the hold is active.[11] That is, the retention policy includes a policy for placing a hold on content to ensure it is retained in a location during a hold period.

## Managing records holds

You can add content, records, and record folders to a hold to freeze them. For records, and record folders this would also suspend their retention schedules.

You can create as many different holds as you want, which are represented as folders in the Holds area.

💡  Access the Holds area using the explorer panel to the left of the File Plan.

In the Holds area there's a **New Hold** option which you use to set up your different hold types. Once you have a list of different holds you can put content, records, and, record folders on as many of the different holds as required.

(*See* https://docs.alfresco.com/ags/concepts/rm-manage-holds.html.)

99.   Each claim in the '300 patent recites an independent invention. Neither claim 1, described above, nor any other individual claim, is representative of all claims in the '300 patent.

---

[11] https://youtu.be/ncHC7dTP_CQ?t=1643

100.     Alfresco and Blue Fish have been aware of the '300 patent since at least the filing of this Complaint. OpenText marks is products with the '300 patent.

101.     Alfresco actively induced and is actively inducing infringement of at least claim 1 of the '300 patent with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b), by activities relating to selling, marketing, advertising, promotion, support, and distribution of its ECM system in the United States.

102.     Blue Fish actively induced and is actively inducing infringement of at least claim 1 of the '300 patent with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b), by activities relating to at least marketing, advertising, promotion, support, training, and installation of Alfresco's ECM system in the United States.

103.     Alfresco encourages, instructs, directs, and/or requires third parties—including its certified partners or customers—to use the infringing ECM software, as described above.

104.     Blue Fish encourages, instructs, and/or directs third parties to use the infringing ECM software, as described above.

105.     Alfresco's partners, customers, and end users of its ECM software directly infringe at least claim 1 of the '300 patent, at least by using the accused ECM software, as described above.

106.     Blue Fish's customers of Alfresco's ECM software directly infringe at least claim 1 of the '300 patent, at least by using the accused ECM software, as described above.

107.     For example, on information and belief, Alfresco shares instructions, guides, and/or manuals, which advertise and instruct third parties on how to use the ECM software to store content in accordance with a retention policy, as described above, including at least customers and partners

such as Blue Fish Development Group. On further information and belief, Alfresco and Blue Fish also provide customer service, training, instruction, and/or technical support to purchasers of the infringing ECM software, which directs and encourages customers to use the ECM software in an infringing manner.

108.    For past infringement, OpenText has suffered damages, including lost profits, as a result of Defendants' infringement of the '300 patent. Defendants are therefore liable to OpenText under 35 U.S.C. § 284 for past damages in an amount that adequately compensates OpenText for Defendants' infringement, but no less than a reasonable royalty.

109.    For ongoing and future infringement, OpenText will continue to suffer irreparable harm unless this Court preliminarily and permanently enjoins Defendants, their agents, employees, representatives, and all others acting in concert with Defendants, from infringing the '300 patent. In the alternative, OpenText is entitled to damages in lieu of an injunction, in an amount consistent with future infringement. Defendants' continued infringement, at least since they had notice of the '300 patent is knowing and willful. Defendants will be adjudicated infringers of a valid patent and, thus, Defendants' future infringement will be willful as a matter of law.

### THIRD CAUSE OF ACTION
### (INFRINGEMENT OF THE '980 PATENT)

110.    OpenText realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

111.    Alfresco and Blue Fish, both alone and together, have infringed and continue to infringe one or more claims of the '980 patent in violation of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States and will continue to do so unless enjoined by this Court. Alfresco directly infringes at least claim 1 of the '980 patent by making, using, selling, and/or offering to sell at least the accused Alfresco ECM Software. Blue Fish directly infringes at least

claim 1 of the '980 patent by, without limitation, using at least the accused Alfresco ECM Software. Alfresco's ECM includes, without limitation, Records Management capabilities provided by a Governance Services application, wherein a user may store a file as a record with retention scheduling and managing functionalities. The records, being a kind of archive, may be stored in any one of a plurality of third-party cloud service stores used for additional storage capacity.

112.    For example, claim 1 of the '980 patent recites:

1. A method of managing content, comprising:

receiving an indication that a retention policy is to be applied to a selected item of content comprising a body of managed content, wherein the selected item of content is stored in a content store; and

automatically retaining the selected item of content and its associated metadata in parallel in accordance with the retention policy, wherein the associated metadata is stored in a metadata store and wherein automatically retaining in the selected item of content and its associated metadata in parallel comprises applying the retention policy both to the selected item of content and to its associated metadata;

receiving a hold request to be placed for the selected item of content for a hold period, wherein placing a hold on a content comprises ensuring the content is retained in a prescribed location during a hold period and preventing the content from being changed; and

in the event: 1) an expiry notification is received that an applicable retention period of the retention policy has ended for the associated metadata, and 2) a disposal notification is received that the associated metadata is to be disposed,

using a processor to prevent the associated metadata from being disposed otherwise permitted by the expiry notification of the associated metadata, based in part on the hold period of the selected item of content.

113.    Alfresco encourages customers to use its ECM Software in a way that infringes each limitation of claim 1 of the '980 patent at least by selling and offering to sell the infringing

software, making its content services available on its website, providing applications that allow users to access those services, widely advertising those services, and providing technical support and instruction to users.

114.    Blue Fish encourages customers to use Alfresco's ECM software in a way that infringes each limitation of claim 1 of the '980 patent at least by advertising Alfresco's ECM software on its website, training customers on how to use Alfresco ECM software, recommending Alfresco ECM software, installing and architecting Alfresco's ECM software, and migrating customer's content from other ECM platforms to Alfresco's ECM software platform.

115.    To the extent the preamble is construed to be limiting, Alfresco's ECM software includes at least "Alfresco Records Management," which provides a method of managing content.[12]

116.    Alfresco's ECM provides a method for managing content that involves receiving an indication that a retention policy is to be applied to a selected item of content comprising a body of managed content. For example, Alfresco's records management allows users to enter a retention policy for categories of documents, indicating that the policy is to be applied to all records within that category. Additionally, when the user uploads or marks a document as a record within that category or folder, the user indicates that the policy should be applied to that document. The ECM receives the user's indication that the policy should be applied.[13]

117.    Alfresco's ECM software provides a method for storing files or records on one or more content stores or third-party cloud service stores.

118.    On information and belief, Alfresco's ECM provides a method for managing records, including automatically retaining the selected record and its associated metadata in

---

[12] https://docs.alfresco.com/rm2.2/references/whats-new-rm.html
[13] https://youtu.be/KQpUJNVIw5E

parallel in accordance with the retention schedule wherein the retention schedule is applied to both the record and its associated metadata. For example, Alfresco's ECM enables a user to specify a disposition schedule, which states how the record should be retained and disposed.[14] In particular, users are able to choose whether or not a record's metadata is retained or destroyed upon the conclusion of a retention schedule; by default, the metadata is destroyed when the retention schedule ends.[15] Thus, Alfresco's ECM further provides a method for managing content that includes ensuring that metadata associated with the selected item of content is retained in parallel with the content in accordance with the retention policy. Based on operation of Alfresco's ECM, the metadata in Alfresco's ECM is stored separately from the content and, on information and belief, this metadata is stored in a metadata store.

| Destroy | Removes the record/folder content from the Records Management system. If the **Maintain record metadata after destroy** option is selected in the retention schedule, then a visual representation of the record, an audit trail, and metadata is retained in the File Plan.<br><br>If the record was declared from a file in an Alfresco site then the file is also removed. |
|---------|---|

(*See* https://docs.alfresco.com/ags/tasks/rm-dispsched-actions.html.)

119.    Alfresco's ECM provides a method including receiving a hold request to be applied to selected records or folders for a hold period, wherein placing a hold on a record or folder ensures the record or folder is retained in a prescribed location during the hold period and preventing the record or folder from being changed.[16]

---

[14] https://docs.alfresco.com/4.1/tasks/rm-dispschedule-create.html
[15] https://docs.alfresco.com/ags/tasks/rm-dispsched-actions.html
[16] https://youtu.be/ncHC7dTP_CQ?t=1643

## Managing records holds

You can add content, records, and record folders to a hold to freeze them. For records, and record folders this would also suspend their retention schedules.

You can create as many different holds as you want, which are represented as folders in the Holds area.

Access the Holds area using the explorer panel to the left of the File Plan.

In the Holds area there's a **New Hold** option which you use to set up your different hold types. Once you have a list of different holds you can put content, records, and, record folders on as many of the different holds as required.

(*See* https://docs.alfresco.com/ags/concepts/rm-manage-holds.html.)

120.    In particular, upon the user's submission of a hold request, the retention schedule is suspended. Alfresco's ECM provides a method for managing content which may operate in hybrid, cloud, on-premise, or mobile device environments, each of which rely on the processing power of a computer processing unit or processor.  Thus, in the event that an expiry notification is received that an applicable retention period of the retention schedule has ended for the associated metadata, and a disposal notification is received that the associated metadata is to be disposed, Alfresco's ECM uses a processor to prevent the associated metadata from being disposed of based in part on the hold period of the selected record or folder.

## Managing records holds

You can add content, records, and record folders to a hold to freeze them. For records, and record folders this would also suspend their retention schedules.

You can create as many different holds as you want, which are represented as folders in the Holds area.

Access the Holds area using the explorer panel to the left of the File Plan.

In the Holds area there's a **New Hold** option which you use to set up your different hold types. Once you have a list of different holds you can put content, records, and, record folders on as many of the different holds as required.

(*See* https://docs.alfresco.com/ags/concepts/rm-manage-holds.html.)

121.    Each claim in the '980 patent recites an independent invention. Neither claim 1, described above, nor any other individual claim is representative of all claims in the '980 patent.

122.    Alfresco and Blue Fish have been aware of the '980 patent since at least the filing of this Complaint. OpenText marks its products with the '980 patent.

123.    Alfresco actively induced and is actively inducing infringement of at least claim 1 of the '980 patent with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b), by activities relating to selling, marketing, advertising, promotion, support, and distribution of its ECM system in the United States.

124.    Blue Fish actively induced and is actively inducing infringement of at least claim 1 of the '980 patent with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b), by activities relating to at least marketing, advertising, promotion, support, training, and installation of Alfresco's ECM system in the United States.

125.    Alfresco encourages, instructs, directs, and/or requires third parties—including its certified partners or customers—to use the infringing ECM software, as described above.

126.    Blue Fish encourages, instructs, and/or directs third parties to use the infringing ECM software, as described above.

127.    Alfresco's partners, customers, and end users of its ECM software directly infringe at least claim 1 of the '980 patent, at least by using the accused ECM software, as described above.

128.    Blue Fish's customers of Alfresco's ECM software directly infringe at least claim 1 of the '980 patent, at least by using the accused ECM software, as described above.

129.    For example, on information and belief, Alfresco shares instructions, guides, and/or manuals, which advertise and instruct third parties on how to use the ECM software to store content in accordance with a retention policy, as described above, including at least customers and partners such as Blue Fish Development Group. On further information and belief, Alfresco and Blue Fish also provide customer service, training, instruction, and/or technical support to purchasers of the

infringing ECM software, which directs and encourages customers to use the ECM software in an infringing manner.

130.   For past infringement, OpenText has suffered damages, including lost profits, as a result of Defendants' infringement of the '980 patent. Defendants are therefore liable to OpenText under 35 U.S.C. § 284 for past damages in an amount that adequately compensates OpenText for Defendants' infringement, but no less than a reasonable royalty.

131.   For ongoing and future infringement, OpenText will continue to suffer irreparable harm unless this Court preliminarily and permanently enjoins Defendants, their agents, employees, representatives, and all others acting in concert with Defendants from infringing the '980 patent. In the alternative, OpenText is entitled to damages in lieu of an injunction, in an amount consistent with future infringement. Defendants' continued infringement, at least since they had notice of the '980 patent, is knowing and willful. Defendants will be adjudicated infringers of a valid patent, and thus Defendants' future infringement will be willful as a matter of law.

## FOURTH CAUSE OF ACTION
### (INFRINGEMENT OF THE '388 PATENT)

132.   OpenText realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

133.   Alfresco and Blue Fish, both alone and together, have infringed and continue to infringe one or more claims of the '388 patent in violation of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States and will continue to do so unless enjoined by this Court. Alfresco directly infringes at least claim 1 of the '388 patent by making, using, selling, and/or offering to sell at least the accused Alfresco ECM Software. Blue Fish directly infringes at least claim 1 of the '388 patent by, without limitation, using at least the accused Alfresco ECM Software. Alfresco's ECM includes, without limitation, Records Management capabilities

provided by a Governance Services application, wherein a user may store a file as a record with retention scheduling and managing functionalities. The records, being a kind of archive, may be stored in any one of a plurality of third-party cloud service stores used for additional storage capacity.

134.    For example, claim 1 of the '388 patent recites:

> 1. A method of controlling access to managed content, comprising:
>
> receiving a request to access a content item by a user;
>
> determining using a processor whether access to the content item is limited to members of any required group associated with the content item based on whether an access control list associated with the content item includes a required group entry specifying a required group, wherein the access control list includes one or more other entries that are not required group entries, and wherein each of the other entries specifies a type of access granted;
>
> in the event that access to the content item is limited to members of any required group associated with the content item, determining access based on whether the user is a member of the required group and further based on the one or more other entries of the access control list, wherein any access granted to the user based on the one or more other entries but not based on any required group entries is denied in the event that the user is not a member of the required group, and wherein the user is denied any access in the event that the user is a member of the required group but is not granted any access based on the one or more other entries; and
>
> in the event that access to the content item is not limited to members of any required group, determining access based on the one or more other entries of the access control list.

135.    Alfresco encourages customers to use its ECM Software in a way that infringes each limitation of claim 1 of the '388 patent at least by selling and offering to sell the infringing software, making its content services available on its website, providing applications that allow users to access those services, widely advertising those services, and providing technical support and instruction to users.

136.    Blue Fish encourages customers to use Alfresco's ECM software in a way that infringes each limitation of claim 1 of the '388 patent at least by advertising Alfresco's ECM software on its website, training customers on how to use Alfresco ECM software, recommending Alfresco ECM software, installing and architecting Alfresco's ECM software, and migrating customers' content from other ECM platforms to Alfresco's ECM software platform.

137.    To the extent the preamble is construed to be limiting, Alfresco's ECM software provides a method of controlling access to managed content through its Records Management service:

Alfresco Records Management 2.2

## What's new in Alfresco Records Management

Alfresco Records Management just got a whole lot simpler and smarter.

We've made lots of improvements to the latest version of Records Management including extended hold support, new compliance options, additional options for organizing the File Plan, improved rule creation, new supported languages, and more.

(*See* https://docs.alfresco.com/rm2.2/references/whats-new-rm.html.)

138.    Alfresco's ECM provides a method of controlling access to managed content that includes receiving a request by a user to access a record or folder. Alfresco's ECM evaluates whether a user's request should be granted or denied based on the permissions associated with that user or record:

## Access Control Lists

An Access Control List (ACL) is an ordered list of one or more Access Control Entries (ACE). An ACE associates a single authority to a single permission group or permission, and states whether the permission is to be allowed or denied. All nodes have an associated ACL.

(*See* https://docs.alfresco.com/6.0/concepts/secur-acl.html.)

139.    Alfresco's ECM allows for "security marks" to be applied to records, folders, and categories. They are also applied to users to identify them as a member of a group with that level

of clearance/access.[17] This method includes determining whether access to the record or folder is limited to members of any required group associated with the record or folder, based on whether an access control list associated with the record or folder includes a required group entry specifying a required group. Alfresco's access control list also includes one or more other entries that are not required group entries, which specify a type of access granted.



Table 1. ACL formats

| ACL format | Authority | Permission | Allow/Deny | Position |
|---|---|---|---|---|
| ACL A (Defining, no inheritance) | All | Read | Allow | 0 |
| ACL B (Shared, inherits from ACL A) | All | Read | Allow | 1 |
| ACL C (Defining, inherits from ACL B) | All | Read | Allow | 2 |
| | ROLE_OWNER | All | Allow | 0 |
| | GROUP_A | Write | Allow | 0 |
| | GROUP_A | CreateChildren | Allow | 0 |
| ACL D (Shared, inherits from ACL C) | ALL | Read | Allow | 3 |
| | ROLE_OWNER | All | Allow | 1 |
| | GROUP_A | Write | Allow | 1 |
| | GROUP_A | CreateChildren | Allow | 1 |

(*See* https://docs.alfresco.com/6.0/concepts/secur-acl-example.html (annotated).)

The ACEs within an ACL are ordered and contain positional information reflecting how an ACE was inherited. DEFINING ACLs have entries at even positions; SHARED ACLs have entries at odd positions. For a DEFINING ACL, any ACEs defined for that ACL have position 0, any inherited from the parent ACL have position two, and so on. For a SHARED ACL, ACEs defined on the ACL from which it inherits will have position one.

When Alfresco Content Services makes permission checks, ACEs are considered in order with the lowest position first. Deny entries take precedence over allow entries at the same position. Once a deny entry is found for a specific authority and permission combination, any matching ACE, at a higher position from further up the inheritance chain, is denied. A deny for one authority does not deny an assignment for a different authority. If a group is denied Read permission, a person who is a member of that group can still be assigned Read permission using another group or directly with their person userName. However, if an authority is granted Read (made up of ReadContent and ReadProperties) and the same authority denied ReadContent, they will just be granted ReadProperties permission. The administration pages of Alfresco Share do not expose deny.

(*See* https://docs.alfresco.com/6.0/concepts/secur-acl-ordereval.html.)

140.    Alfresco's ECM provides a method for controlling record access which may operate in hybrid, cloud, on-premise, or mobile device environments, each of which rely on the

---

[17] https://docs.alfresco.com/rm/concepts/rm-sc-overview.html

processing power of a computer processing unit or processor. Thus, Alfresco's ECM relies on a processor to implement the method step of determining whether access is limited.

141.    Alfresco's ECM provides a method for controlling record access where, in the event that access to the record or folder is limited to members of any required group associated with the record, access is determined based on whether the user is a member of the required group and further based on the one or more other entries of the access control list. If the user is not a member of the required group, then any access granted to the user based on the one or more other entries is denied. Similarly, if the user is not granted any access based on the one or more other entries, then access is denied even if the user is a member of the required group. For example, under Alfresco's security controls, a user must have the specified clearance to be able to classify documents at that level.[18] Where access to a record or file is not limited to members of any required group, Alfresco's ECM method determines access based on the one or more other entries of the access control list.

| ACL E (Defining, inherits from ACL B) | All | Read | Allow | 2 |
| | Andy | All | Allow | 0 |
| | Bob | Write | Allow | 0 |
| | Bob | WriteContent | Deny | 0 |
| ACL F (Shared, inherits from ACL E) | All | Read | Allow | 3 |
| | Andy | All | Allow | 1 |
| | Bob | Write | Allow | 1 |
| | Bob | WriteContent | Deny | 1 |
| ACL G (Defining, no inheritance) | Bob | All | Allow | 0 |
| ACL H (Shared, inherits from ACL G) | Bob | All | Allow | 1 |

(*See* https://docs.alfresco.com/6.0/concepts/secur-acl-example.html.)

---

[18] https://docs.alfresco.com/rm/references/rm-classification-tips.html

Anyone in GROUP_A can edit existing content or create new content. The owner ACE means that anyone who creates content then has full rights to it. The ACE assignment for owner is not normally required as all rights are given to node owners in the context-free ACL defined in the default permission configuration.

ACL E adds some specific user ACEs in addition to those defined in ACL A. As an example, it allows Bob Write but also denies WriteContent. Write is made up of WriteContent and WriteProperties. Bob will only be allowed WriteProperties.

(*See* https://docs.alfresco.com/6.0/concepts/secur-acl-example.html; https://docs.alfresco.com/6.0/concepts/secur-acl-ordereval.html .)

142.    Each claim in the '388 patent recites an independent invention. Neither claim 1, described above, nor any other individual claim is representative of all claims in the '388 patent.

143.    Alfresco and Blue Fish have been aware of the '388 patent since at least the filing of this Complaint. OpenText marks its products with the '388 patent.

144.    Alfresco actively induced and is actively inducing infringement of at least claim 1 of the '388 patent with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b), by activities relating to selling, marketing, advertising, promotion, support, and distribution of its ECM system in the United States.

145.    Blue Fish actively induced and is actively inducing infringement of at least claim 1 of the '388 patent with specific intent to induce infringement, and/or willful blindness to the possibility that its acts induce infringement, in violation of 35 U.S.C. § 271(b), by activities relating to at least marketing, advertising, promotion, support, training, and installation of Alfresco's ECM system in the United States.

146.    Alfresco encourages, instructs, directs, and/or requires third parties—including its certified partners or customers—to use the infringing ECM software, as described above.

147.    Blue Fish encourages, instructs, and/or directs third parties to use the infringing ECM software, as described above.

148.    Alfresco's partners, customers, and end users of its ECM software directly infringe

at least claim 1 of the '388 patent, at least by using the accused ECM software, as described above.

149.    Blue Fish's customers of Alfresco's ECM software directly infringe at least claim 1 of the '388 patent, at least by using the accused ECM software, as described above.

150.    For example, on information and belief, Alfresco shares instructions, guides, and/or manuals, which advertises and instructs third parties on how to use the ECM software to store content in accordance with a retention policy, as described above, including at least customers and partners such as Blue Fish Development Group. On further information and belief, Alfresco and Blue Fish also provide customer service, training, instruction, and/or technical support to purchasers of the infringing ECM software, which directs and encourages customers to use the ECM software in an infringing manner.

151.    For past infringement, OpenText has suffered damages, including lost profits, as a result of Defendants' infringement of the '388 patent. Defendants are therefore liable to OpenText under 35 U.S.C. § 284 for past damages in an amount that adequately compensates OpenText for Defendants' infringement, but no less than a reasonable royalty.

152.    For ongoing and future infringement, OpenText will continue to suffer irreparable harm unless this Court preliminarily and permanently enjoins Defendants, their agents, employees, representatives, and all others acting in concert with Defendants from infringing the '388 patent. In the alternative, OpenText is entitled to damages in lieu of an injunction, in an amount consistent with future infringement. Defendants' continued infringement, at least since they had notice of the '388 patent, is knowing and willful. Defendants will be adjudicated infringers of a valid patent, and thus Defendants' future infringement will be willful as a matter of law.

## **PRAYER FOR RELIEF**

WHEREFORE, OpenText respectfully requests the following relief:

a) That this Court adjudge and decree that Defendants have been, and are currently, infringing each of the Patents-in-Suit;

b) That this Court award damages to OpenText to compensate it for Defendants' past infringement of the Patents-in-Suit, through the date of trial in this action;

c) That this Court award pre- and post-judgment interest on such damages to OpenText;

d) That this Court order an accounting of damages incurred by OpenText from six years prior to the date this lawsuit was filed through the entry of a final, non-appealable judgment;

e) That this Court determine that this patent infringement case is exceptional pursuant to 35 U.S.C. §§ 284 and 285 and award OpenText its costs and attorneys' fees incurred in this action;

f) That this Court award increased damages under 35 U.S.C. § 284;

g) That this Court preliminarily and permanently enjoin Defendants from infringing any of the Patents-in-Suit;

h) That this Court order Defendants to:

(i) recall and collect from all persons and entities that have purchased any and all products found to infringe any of the Patents-in-Suit that were made, offered for sale, sold, or otherwise distributed in the United States by Defendants or anyone acting on their behalf;

(ii) destroy or deliver all such infringing products to OpenText;

(iii) revoke all licenses to all such infringing products;

(iv) disable all web pages offering or advertising all such infringing products;

(v) destroy all other marketing materials relating to all such infringing products;

(vi) disable all applications providing access to all such infringing software; and

(vii) destroy all infringing software that exists on hosted systems,

i) That this Court, if it declines to enjoin Defendants from infringing any of the Patents-in-Suit, award damages for future infringement in lieu of an injunction; and

j) That this Court award such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

OpenText respectfully requests a trial by jury on all issues triable thereby.

DATED:  October 5, 2020

By:   */s/ Steve Sprinkle*
Steve Sprinkle
TEXAS BAR NO. 00794962
SPRINKLE IP LAW GROUP, P.C.
1301 W. 25TH STREET, SUITE 408
AUSTIN, TEXAS 78705
TEL: 512-637-9220
SSPRINKLE@SPRINKLELAW.COM

Christopher C. Campbell (*pro hac vice to be filed*)
Yushan Luo *(pro hac vice to be filed)*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
Telephone: (202) 626-5578
Facsimile: (202) 626-3737
ccampbell@kslaw.com
yluo@kslaw.com

Britton F. Davis *(pro hac vice to be filed)*
Angela Tarasi *(pro hac vice to be filed)*
Mikaela Stone *(pro hac vice to be filed)*
KING & SPALDING LLP
1515 Wynkoop St.
Suite 800
Denver, CO 80202
Telephone: (720) 535-2300
Facsimile: (720) 535-2400
bfdavis@kslaw.com

atarasi@kslaw.com
mikaela.stone@kslaw.com

*Attorneys for Plaintiff Open Text Corp.*